UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

CHARLES D. STERGIOS,                    )
                                        )
            Movant,                     )
                                        )
    v.                                  )       No. 2:12-cv-00237-GZS
                                        )       No. 2:10-cr-00002-GZS-1
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Respondent                  )

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION,
MOTION FOR DISCOVERY, AND MOTION TO AMEND**

On October 26, 2010, the court entered its judgment on a jury verdict and plea and

sentenced Charles Stergios to 80 months of imprisonment on fraud convictions and to a 60-

month concurrent sentence on a post-trial guilty plea to escape.  (ECF No. 97.[1])  The court also

imposed five years of supervised release to follow Stergios's release from prison.  (Id.)  The

terms of supervised release include certain special conditions.  (Id. at 4.)  Following an

unsuccessful appeal to the First Circuit Court of Appeals, Stergios now (1) moves to vacate his

sentence pursuant to 28 U.S.C. § 2255, advancing twelve grounds;  (2) moves for certain

discovery;  and (3) moves to amend his grounds to supplement a claim alleging prosecutorial

misconduct before the grand jury.  The government has answered and requests summary

dismissal of the section 2255 motion and denial of the ancillary motions.  The court referred the

matter for report and recommendation.  Based on my review of the record, I offer the following

report and recommend that the court deny Stergios's section 2255 motion, deny his motion for

discovery, deny his motion to amend, and dismiss this proceeding without a hearing.

---

[1]     ECF is an acronym for Electronic Case Files and is a shorthand reference to this court's electronic docket.

### BACKGROUND

Stergios's 2010 convictions were not his first convictions for fraud.  In 2005 the court sentenced Stergios to 75 months of imprisonment on charges of wire, mail, and bank fraud.  The conduct of which Stergios was convicted in 2010 occurred while Stergios was completing his term of imprisonment under the supervision of a halfway house.  While on home confinement, Stergios violated a special condition that prohibited him from possessing a computer and accessing the Internet.  Stergios used the Internet to attempt to obtain funds from financial institutions through fraudulent means.  As charged in the indictment the first count concerned funds taken from Maine Bank and Trust and the second and third counts involved funds taken from USAA Bank.  (Superseding Indictment, ECF No. 5.)  Use of the Internet was one facet of a broader check kiting scheme that illegitimately inflated Stergios's bank accounts by more than $30,000.  While on home confinement, Stergios also escaped from custody, travelled to New York, and pursued his check kiting practices there.  Count four of the indictment, severed for purposes of trial, charged escape.

On July 21, 2010, following a three-day trial, the jury returned a verdict finding Charles Stergios guilty of two counts of bank fraud and one count of mail fraud.  (ECF No. 84.)  The next day, Stergios entered a plea of guilty to escape.  (Transcript of Rule 11 Proceeding, ECF No. 111;  Minute Entry, ECF No. 90.)  The court conducted a sentencing hearing on October 26, 2010.  (Transcript of Sentencing Hearing, ECF No. 106;  Minute Entry, ECF No. 95.)  Although the Sentencing Guidelines base offense level for the fraud crimes was 7, the court applied a 16-level enhancement, see U.S.S.G. § 2B1.1(b)(1)(I), for relevant conduct involving Stergios's attempt to negotiate a $1.4 million deposit and $1.2 million withdrawal during his visit to New York.  (Transcript of Sentencing Hearing at 34-35;  see also PSR ¶ 10A.)  Although Stergios

failed to accomplish his objective, the court found that Stergios intended for such a loss to occur. The circumstances surrounding the attempt were uncharged conduct and were never presented to the jury.  (Id. at 35.)

The offense level for Stergios's escape conviction was 13.  (Id. at 34.)  The court denied Stergios the benefit of a downward departure for acceptance of responsibility.  The court also found that Stergios's criminal history category was four, which Stergios does not challenge in his section 2255 motion.  (Id.)  The guideline range for the fraud convictions was between 70 and 87 months.  (Id.)  The guideline range for the escape conviction was between 24 and 30 months. The court imposed a sentence of 80 months on the fraud counts and 60 months on the escape count.  (Id. at 37.)  The 60-month term for escape corresponds with the statutory maximum term of imprisonment for that offense.  18 U.S.C. § 751(a).  In addition to imprisonment, the court ordered that Stergios serve five years of supervised release on counts one and two, and three years (concurrent) on counts three and four.  (Transcript of Sentencing Hearing at 37.)

The court also imposed the following special conditions of supervised release:

Number seven.  Subject to my review upon the request of the defendant or the Government, the defendant shall not possess or use a computer to access an online computer service at any location, including his employment, without the supervising officer's prior approval.  This includes any Internet service provider, bulletin board system or other public or private computer network.

Number eight.  This defendant shall participate and comply with the requirements of the Computer and Internet Monitoring Program, which may include partial or full restriction of computer Internet, Intranet and/or Internet capable devices, and shall pay for services directly to the monitoring company.  He shall submit to periodic, unannounced examinations of his computer storage data and/or electronic or Internet capable devices performed by the probation officer based on a reasonable suspicion of contraband evidence or violation of supervision, which may include retrieval and copying of any prohibited data and/or removal of such systems for the purpose of conducting a more thorough inspection.

(Id. at 40.)  Counsel objected to these conditions at the sentencing hearing, noting that by the time Stergios was out of jail on his 80-month sentence, there would not likely be phone service that did not run through a computer network.  (Id. at 42.)  Judge Singal noted and overruled the objection, explaining that Mr. Stergios would be able to request a modification if that were the case.  (Id.)

Stergios filed two notices of appeal, one on October 29, 2010, (ECF No. 99) and one on November 4, 2010 (ECF No. 103).  The First Circuit Court of Appeals issued a judgment on January 13, 2011, dismissing the later appeal as duplicative of the original appeal.  (ECF No. 112.)  On October 18, 2011, the Court of Appeals affirmed the judgment of the District Court.  (ECF No. 125.)  In its opinion, United States v. Stergios, 659 F.3d 127 (1st Cir. 2011), the Court of Appeals rejected, among other arguments, Stergios's challenge to the special conditions.  It found that the special conditions will cause no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release and that they are reasonably related to the nature and circumstances of the offense at issue and Stergios's particular characteristics, insofar as "Stergios relied heavily on the internet to perpetrate his frauds" and "had a history of using the internet to commit crimes." Id. at 134.  The Court of Appeals also affirmed the court's use of the million-dollar check-kiting conduct at sentencing.  Id. at 135-36 (discussing U.S.S.G. § 2B1.1, cmt. n.3(A)).

Stergios filed the current motion to vacate, set aside, or correct his sentence on September 7, 2012.  (Motion to Vacate, ECF No. 134;  Additional Grounds, ECF No. 134-1.)  The government concedes that Stergios's motion is timely.  (Government's Motion for Summary Dismissal at 1 n.1, ECF No. 153.)  Stergios has also filed a motion for disclosure of Jencks material and discovery.  (ECF No. 136.)  In his discovery motion Stergios says he needs to

review the grand jury testimony of Michael Desrosiers, a United States postal inspector who was the government's final witness against him at the trial.  Lastly, Stergios has filed a motion to amend his section 2255 motion, stating that he received Desrosiers's grand jury testimony from the Federal Defender Office and that, based on his review of the testimony, he wishes to raise an additional ground of prosecutorial misconduct.  (ECF No. 139.)

DISCUSSION

### A.      The Motion for Discovery (ECF No. 136)

Stergios requests an order for disclosure of Jenks material, referring only to the grand jury testimony of Postal Inspector Michael Desrosiers.  However, in his later-filed motion to amend Stergios indicates that he received a copy of Desrosiers's grand jury testimony from the Federal Defender Office.  Still, he would like the court to read Desrosiers's grand jury testimony to understand why he believes his due process rights were violated by Desrosiers and the prosecutor.  The court has discretion to grant such a motion, but the movant has a burden to show "a particularized need" to overcome the longstanding policy of secrecy that applies to grand jury proceedings.  Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959).

In some respects the motion is moot because Stergios now indicates that he obtained Desrosiers's grand jury testimony.  However, assuming the motion is not entirely moot because of an issue as to whether the testimony should be placed on the record of this proceeding, I recommend that the court deny the motion.  Based on Stergios's representations about the content of the testimony, there is no prospect of habeas relief being granted for any alleged grand jury improprieties.  The grand jury issue is discussed more fully in discussion section C.2.a., below.

**B.     The Motion to Amend (ECF No. 139)**

Stergios wishes to amend his section 2255 motion based on what he read of Desrosiers's testimony before the grand jury.  Stergios complains of repeated reference to his prior bank fraud conviction, to the fact that he was "on escape" during the events that underlie the most recent prosecution, to the fact that he once threw a water pitcher at the prosecutor, to the fact that he was supposed to be on home confinement, to some of the details of the prior "scam," to the fact that the latest scam included attempts to negotiate million-dollar checks, and a non-expert representation concerning Stergios's signature.  The government opposes the motion because the proposed amendment is not sworn.  (Government's Motion for Summary Dismissal at 31-32.)

By rule, section 2255 motions must, among other things, "be signed under penalty of perjury."  Rule 2(b)(5), Rules Governing Section 2255 Proceedings.  If the proposed amendments set forth viable grounds for habeas relief, I would afford Stergios the means of curing the failure to properly sign his proposed amendments, although the absence of a proper signature does not preclude the court from considering the grounds set forth in the motion to amend.  Ferrara v. United States, 456 F.3d 278, 295 (1st Cir. 2006).  Here, however, there is no need to address this pleading formality because it is apparent that the proposed amendments do not set forth viable grounds for habeas relief.  The reasons why are discussed below in section C.2.a. of this discussion and the motion to amend is denied as futile.

**C.     The 2255 Motion (ECF No. 134)**

*1.     Standard of review*

Pursuant to 28 U.S.C. § 2255(a), a person may move to vacate his sentence on four different grounds:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States";  (2) "that the court was without jurisdiction" to impose its sentence;  (3) "that

the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (quoting section 2255). Although the fourth category is "rather general," it is only implicated "if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). The burden is on the section 2255 movant to make out a case for section 2255 relief. David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).

A habeas petition is not a substitute for an appeal. Berthoff v. United States, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." Id. An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the movant shows that counsel's representation fell below an objective standard of reasonableness and prejudiced the movant's defense. Owens v. United States, 483 F.3d 48, 63 (1st Cir. 2007). Nevertheless: "A nonconstitutional claim that could have been, but was not, raised on appeal, may not be asserted by collateral attack under § 2255 absent exceptional circumstances." Knight, 37 F.3d at 772.

When a section 2255 motion is received, the court must promptly examine it. Rule 4(b), Rules Governing Section 2255 Proceedings. "If it *plainly* appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Id. (emphasis added). Otherwise, the ordinary course is to order the United States Attorney to answer. Id. Following an answer and opportunity for reply,

if it appears from the motion and the record that the section 2255 movant may be able to

demonstrate an entitlement to habeas relief, then "it is the duty of the courts to provide the

necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899,

908-909 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).  An evidentiary hearing is

required "unless 'the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief.'"  Owens, 483 F.3d at 57 (quoting 28 U.S.C. § 2255).

In making its assessment, the court must "take as true the sworn allegations of fact set

forth in the petition 'unless those allegations are merely conclusory, contradicted by the record,

or inherently incredible.'"  Id. (quoting Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002)).

"A habeas petitioner must do more that proffer gauzy generalities or drop self-serving hints that

a constitutional violation lurks in the wings." David, 134 F.3d at 478.  Summary dismissal of a

motion is permitted when the allegations are "vague, conclusory, or palpably incredible," even

"if the record does not conclusively and expressly belie [the] claim." Id. (quoting Machibroda v.

United States, 368 U.S. 487, 495 (1962)).  It is appropriate to expect the petitioner to supply the

court with salient details of his claim prior to permitting discovery or a hearing.  Id.

When the court reviews Stergios's section 2255 motion, the government's motion to

dismiss the section 2255 motion, and this recommended decision, it will be "at liberty to employ

the knowledge gleaned during previous proceedings and make findings based thereon without

convening an additional hearing."  United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).  In

issuing this recommended decision my ability to take such liberty is limited by the fact that I did

not preside at Stergios's trial or sentencing.  However, I can approach the record in a fashion that

takes into account the court's ability to use the knowledge it has of the prior proceedings.

2.      *The Grounds*

      a.      <u>Prosecutorial misconduct/ineffective assistance related to the government's grand jury presentation.</u>

Stergios complains that the government conducted its presentation to the grand jury in a manner that biased the grand jury against him.  According to Stergios, this involved the presentation of testimony from a postal inspector who divulged to the grand jury certain prior criminal conduct by Stergios that was not germane to the crimes contained in the indictment. This included the fact of Stergios's prior convictions for fraudulent activity, his theft of credit card information taken from his father's restaurant, and allegedly hitting the prosecutor with a water pitcher.  Stergios also asserts that his trial counsel was ineffective because he refused to file a motion seeking the dismissal of the indictment on these grounds.

The Fifth Amendment of the United States Constitution provides:  "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ."  "The grand jury occupies a unique place in our justice system.  It is not assigned by the Constitution to any of the three branches of government, and therefore acts independently of each."  <u>Whitehouse v. United States District Court</u>, 53 F.3d 1349, 1356 (1st Cir. 1995).  "[T]he grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."   <u>United States v. Williams</u>, 504 U.S. 36, 51. (1992).  Among other attributes, the grand jury operates independently of court supervision, exercises investigative powers, and has general freedom from procedural niceties.  <u>Whitehouse</u>, 53 F.3d at 1357.  Though it "normally operates in the courthouse and under judicial auspices," judicial involvement in the grand jury's functioning is traditionally limited to "the constitutive one of calling the grand jurors together and administering their oaths of office."  <u>Williams</u>, 504 U.S. at 47.  Because of its distinct role, there is nothing uncommon about a grand jury obtaining

evidence that a court would exclude from a trial presentation to a petit jury, or about the grand jury not seeing exculpatory evidence that a defendant would be entitled to discover and present at trial.

Thus, for example, in <u>Williams</u> the Supreme Court held that a court may not dismiss an indictment on the ground that the government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession.  <u>Id.</u> at 37-38, 45-47.  The reason is that the grand jury is not convened to weigh and assess guilt or the merit of a suspect's defenses and "it has always been thought sufficient" that the grand jury should "hear only the prosecutor's side."  <u>Id.</u> at 51. The Supreme Court has consistently refrained from intruding into the grand jury's operations in relation to "the grand jury's evidence-taking process."  <u>Id.</u> at 50 (citing precedent refusing to impose an exclusionary rule for evidence derived from a violation of the Fourth Amendment or to impose a hearsay rule on an institution that allows lay persons to fulfill their duties free of technical evidentiary rules).  Dismissal of an indictment is restricted to "extremely limited circumstances," <u>Whitehouse</u>, 53 F.3d at 1360, and "'a challenge to the reliability or competence of the evidence presented to the grand jury' will not be heard."  <u>Williams</u>, 504 U.S. at 54 (quoting <u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 261 (1988)).  <u>See</u> <u>also</u> <u>id.</u> at 46 n.6 (identifying some rare circumstances not presented here).  The matters of which Stergios complains in his motion (and in his proposed amendments to the motion) simply do not suggest the existence of conduct that would have justified filing a motion to dismiss the indictment.[2]  For

---

[2]     Rule 6 of the Federal Rules of Criminal Procedure allows for motions to dismiss an indictment, but limits the grounds to situations in which the grand jury was not lawfully drawn, summoned, or selected, or based on the absence of at least twelve legally qualified jurors. Fed. R. Crim. P. 6(b)(2).  It does not authorize motions to dismiss on the grounds that Stergios complains of.   Rule 12 contemplates pretrial motions to dismiss an indictment based on a "defect in instituting the prosecution" or a "defect in the indictment or information," such as a claim that the indictment "fails to invoke the court's jurisdiction or to state an offense."  Fed. R. Crim. P. 12(b)(3).  Stergios's assertions do not fall into this category either.

these reasons the grounds advanced by Stergios make out neither a due process violation nor a

claim of ineffective assistance of counsel.

             b.       Ineffective assistance related to defense counsel's failure to
                      introduce or object to certain evidence.

Stergios complains that his trial counsel did not provide an adequate defense at trial

because he did not present unnamed witnesses who could have supplied an alibi; did not object

to the presentation of certain affidavits from the Secretary of State, the FDIC, and "ATT," in

violation of his confrontation rights;  and did not introduce evidence showing that Stergios's

home computers were assigned IP addresses by Comcast rather than GWI.  In its response, the

government says these grounds belong in the "gauzy generalities" category.  I am inclined to

agree with respect to the alibi, the "ATT" matter which is unexplained and not readily apparent

from the record, and the IP address matter.  Stergios has had a chance to reply and give details

but has not done so.

As for the failure to object to affidavits, presumably Stergios is referring to

foundation/authentication affidavits associated with one certificate from the Maine Secretary of

State concerning Stergios's state identification and three certificates from the FDIC concerning

the insured status of Maine Bank and Trust, Peoples United Bank, and USAA (United Services

Automobile Association) Federal Savings Bank.  (See Trial Transcript Day 3 at 486-87, ECF No.

110.)  In the First Circuit's opinion, it was noted that Stergios had failed to object to the

introduction of the banks' FDIC certificates and related FDIC affidavits stating that the FDIC

had no record of termination of the bank's FDIC insurance.  Stergios, 659 F.3d at 132.  Stergios

maintains that this amounted to a confrontation clause violation.

The Sixth Amendment's Confrontation Clause prohibits the introduction of testimonial

statements made out of court unless the witness is unavailable to testify and the defendant had a

prior opportunity to cross-examine the witness.  United States v. Cameron, 699 F.3d 621, 639

(1st Cir. 2012) (citing Crawford v. Washington, 541 U.S. 36, 68 (2004)).  However, if the

statement at issue is "nontestimonial," then the Confrontation Clause does not require

confrontation as a condition of admissibility.  Id.  Public records of non-law enforcement

agencies are an example of nontestimonial statements, provided they are not the type of

documents produced for use at trial.  Id.  at 639-40 (discussing the holding of Melendez-Diaz v.

Massachusetts, 557 U.S. 305 (2009)).  The state identification and FDIC certificates at issue in

this case do not fall into the testimonial category.

     To succeed on his ineffective assistance of counsel claim, Stergios "must establish both

that counsel's representation fell below an objective standard of reasonableness and that there

exists a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Turner v. United States, 699 F.3d 578, 584 (1st Cir.

2012).  The two prongs of the ineffective assistance test are commonly referred to as the "cause"

and "actual prejudice" tests.  Bucci v. United States, 662 F.3d 18, 29 (1st Cir. 2011).  A district

court reviewing such claims need not address both prongs of the test because a failure to meet

either prong will undermine the claim.  Strickland v. Washington, 466 U.S. 668, 697 (1984).

     As for the "cause" test, the court must be "fairly tolerant" of counsel's performance

because the Constitution does not guarantee a perfect defense.  Moreno-Espada v. United States,

666 F.3d 60, 65 (1st Cir. 2012) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994)).  The

issue is whether counsel's performance was "'within the wide range of reasonable professional

assistance' that a competent criminal defense counsel could provide under 'prevailing

professional norms.'"  Bucci, 662 F.3d at 30 (quoting Strickland, 446 U.S. at 688-89).  "Judicial

scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must

overcome a 'strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy.'" Id. (quoting Strickland, 446 U.S. at 689). Because the certificates were nontestimonial, there was little counsel would have gained from an objection. At most, some portion of the FDIC affidavit may have been stricken for asserting that FDIC insured status had not lapsed, though no portion of the FDIC authentication affidavit qualifies as accusatory, from what Stergios has indicated. In any event, even assuming deficient performance, Stergios fails to demonstrate actual prejudice.

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect. Turner, 699 F.3d at 584 (quoting Stephens v. Hall, 294 F.3d 210, 218 (1st Cir. 2002)). Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of government witnesses. Id. The witnesses' testimony reliably established that Maine Bank and Trust was FDIC insured (Trial Transcript Day 1 at 65 (re MB&T),  177, 228 (re USAA), ECF No. 108) and the certificates themselves, being non-testimonial evidence of insured status, would have been properly admitted over objection based on the statements of authentication found in the FDIC affidavit, even if there were a testimonial portion of the affidavit that should have been stricken. This solid evidentiary foundation would not have been eroded by the exclusion of a statement that the certificates were never terminated.

      c.    Ineffective assistance related to defense counsel's failure to request an instruction concerning Chase bank.

Stergios complains that trial counsel should have "changed" the jury instructions to make sure that the jury would understand that they could not include any JP Morgan Chase Bank

conduct against him because no witness from Chase was called to testify.  This is an unpreserved, nonconstitutional claim that could have been, but was not, raised on appeal, and nothing in Stergios's motion suggests the sort of exceptional circumstances that would justify collateral review.  Knight, 37 F.3d at 772.  The evidence at trial was presented through Edward Sawyer, a fraud investigator with Peoples United Bank (which purchased Maine Bank & Trust after 2009).  Mr. Sawyer testified that MB&T was presented with three counterfeit checks for payment to Charles Stergios using routing information identical to an MB&T treasurer's check but bearing a "Blue Monkey Enterprises" mark.  (Trial Transcript, Day 1, at 116, 133-43.) According to the indictment, Stergios negotiated two of the checks through JP Morgan Chase Bank.  The checks themselves were admitted over objection through Mr. Sawyer.  (Id. 137, 141, 143.)  Chase did not otherwise feature in the prosecution's evidence and the fact that the checks were routed through Chase rather than another financial institution did not matter.  The point is that they were counterfeit and were drawn on MB&T's account and made payable to Charles Stergios.

> d.      The 60-month, statutory maximum sentence for escape.

Stergios says it was a violation of his rights that the court sentenced him to a maximum sentence for escape, significantly above the recommended guideline range, without explaining why it did so.  This is another procedurally defaulted, non-constitutional claim.  As the government asserts (Government's Motion for Summary Dismissal at 31), there are no exceptional circumstances here because the sentence did not exceed the statutory maximum and is being served concurrently with the longer, 80-month sentence.  See Knight, 37 F.3d 769, 772-773 (rejecting procedurally defaulted collateral attacks grounded on alleged sentencing guidelines errors).

e.    Rights under the First Amendment and Interstate Commerce
Clause.

Stergios sarcastically queries, "What is this, China?" and asserts that his right to access

web-based media, communications, and commerce cannot be restricted as part of a sentence for

bank fraud and mail fraud that involved use of the Internet.  The First Circuit already explained

on direct review why the special conditions of supervised release do not offend the First

Amendment.  There is no legal basis or authority of which I am aware that would place greater

constitutional protection on Stergios's right to engage in e-commerce as compared with his right

to engage in or consume Internet-based speech.  According to the First Circuit the special

conditions are reasonably calibrated to account for the nature of Stergios's criminal conduct and

to address Stergios's fraudulent predilections.  Moreover, there is a measure of discretion

delegated to the supervising officer and Stergios is not prohibited from petitioning the court for

review of the special conditions.  There is no constitutional violation.  Nor are there exceptional

circumstances.

f.    Some members of the jury pool observing Stergios in handcuffs.

Stergios says that some members of the jury pool got a glimpse of him in handcuffs when

the door to Judge Singal's courtroom opened and he was passing in the hallway.  Stergios was

not shackled at trial, so there was no due process violation in that respect.  See Deck v. Missouri,

544 U.S. 622, 626 (2005) (observing that the "law has long forbidden routine use of visible

shackles during the guilt phase" of trial and extending the rule to the sentencing stage of capital

cases);  Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986).  The government says that, assuming

some member of the jury pool observed Stergios in handcuffs in the hallway, counsel could have

decided not to raise an issue because it would only "draw attention to the fact that Stergios was

in handcuffs."  (Government's Motion for Summary Dismissal at 27.)  This is a fair assessment.

15

To demand voir dire of the entire jury panel would only magnify the matter.  Counsel was not ineffective for not pursuing that course of action.

The Ninth Circuit has addressed this issue in several cases and has observed in one that "[a] jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom has not warranted habeas relief."  Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999).  Trial courts in that circuit have rejected habeas petitions where the grounds were limited to observation of the defendant during transport but not during trial.  Higgins v. Hedgpeth, No. 2:06-cv-02192-RAJ-JLW, 2010 U.S. Dist. LEXIS 45486, at *21-23, 2010 WL 1904866, at *8-9 (E.D. Cal. May 10, 2010) (collecting Ninth Circuit cases so holding).  This is sensible because in cases involving a sighting of the defendant during a transport the defendant is otherwise observed unshackled during the jury trial, dispelling the idea that he is so incorrigible as to require constant restraint.  Additionally, in this case the evidence of guilt was powerful and the conviction did not turn on any finding involving violence.  Compare Dyas v. Poole, 309 F.3d 586, 588-89 (9th Cir. 2002) (involving a defendant shackled throughout trial, a violent crime charge, and non-overwhelming evidence of guilt).  Moreover, there is no constitutional rule against placing a pretrial detainee in handcuffs for purposes of transport to or from the courthouse.

The First Circuit has addressed such a claim in the habeas context on at least one occasion.  In Dupont v. Hall, 555 F.2d 15 (1st Cir. 1977), the Court wrote:

> The days when defendants, or certain classes of defendants, were, without apparent need, tried to a jury in conspicuous custody have long gone. Nonetheless, there have been, and will doubtless continue to be, occasional instances where defendants are inadvertently observed in custody out of the courtroom.  While, of course, this is to be avoided so far as possible, it is inevitable that accidents will happen.  Nor do we think it as serious as is always sought to be maintained.  With the plethora of court news appearing daily in the press, even the most unsophisticated juror must know that defendants indicted for

16

serious crimes, and often even for minor ones, may have to post bail.  They must also know that many defendants lack the resources to accomplish this.  Under these circumstances we cannot think that the emotional impact of seeing the defendant in custody is necessarily hostile - it may be quite the reverse.

Id.  Similarly, on direct appeal, the First Circuit has concluded that a "fleeting glance by jurors of a defendant outside the courtroom in handcuffs does not justify a new trial."  United States v. Garcia-Rosa, 876 F.2d 209, 237 (1st Cir. 1989) (quoting United States v. Ayres, 725 F.2d 806, 813 (1st Cir.), cert. denied, 469 U.S. 817 (1984)); accord United States v. Williams, 809 F.2d 75, 83 (1st Cir. 1986), cert. denied, 482 U.S. 906 (1987).  See also Mendoza v. Berghuis, 544 F.3d 650, 655 (6th Cir. 2008) (reviewing 2254 petition and describing it as "not . . . especially significant" that the defendant was seen by several jurors when he was shackled during transport);  United States v. Moreno, 933 F.2d 362, 368 (6th Cir. 1991) ("We have distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse");  Wright v. Texas, 533 F.2d 185, 188 (5th Cir. 1976) (collecting cases supporting the proposition that "a brief and fortuitous encounter of the defendant in handcuffs by jurors is not prejudicial").  These cases support the conclusion that a sighting of the kind asserted here is not presumptively prejudicial and, moreover, that the mere possibility of prejudice does not amount to a showing of actual prejudice required to support vacatur of a conviction on collateral attack.

> g.    Ineffective assistance based on the failure of defense counsel to object or request a limiting instruction concerning the presentation to the jury of a photograph of Stergios taken outside TD Bank.

According to Stergios, the court ordered that a picture showing him outside of TD Bank not be shown to the jury.  Stergios says the picture was shown anyway and that his counsel failed to object or request an instruction that the jury disregard the picture.  The government does not respond to Stergios's suggestion that the court ordered that the picture not be shown to the jury.

Instead, it states that "the identity of the person making deposits and withdrawals of checks . . . was a central question of fact" and that the jury was able to weigh the evidence because they had the opportunity to observe Stergios throughout the trial and could compare the photographic depiction to the defendant. The government says counsel exercised sound judgment in not raising an objection. (Government's Motion for Summary Dismissal at 27.)

In this case there were no in limine motions and no photographic evidence was discussed at the court's pretrial conference. (Transcript of Proceedings, July 16, 2010, at 2, ECF No. 107.) This matter came up on the second day of trial during the testimony of Tamika Brooks, a TD Bank teller in New York. (Trial Transcript, Day 2, at 404-406, ECF No. 109.) Presented with pictures of her teller station showing her and a customer (whom the government maintained was Stergios), Brooks identified the location and herself in the picture but testified that she did not remember the customer or the transaction. (Id. 406.) Defense counsel objected and there was a sidebar conference concerning the objection. (Id.) The court overruled foundation, relevancy, and undue prejudice objections. (Id. at 407-408.) However, one of the pictures was taken from outside of the bank and depicted an area between two of the bank's outside ATM machines. The court required a further foundation for this picture. (Id. at 408.) Ultimately, the court admitted the picture over objection. (Id. at 413.) This is another procedurally defaulted, nonconstitutional ground for habeas relief that does not involve exceptional circumstances. Moreover, Stergios cannot demonstrate actual prejudice from appellate counsel's failure to reassert this objection on appeal because the evidentiary ruling was not erroneous.

        h.     Prejudice occasioned by the government's failure to provide a "notice of enhancement."

In his eighth ground Stergios complains that the government never provided him with advance "notice of enhancement" and that he only learned that he was subject to a potential

enhancement from reading the Probation Office's presentence report.  Presumably Stergios is

concerned with the sentencing enhancement associated with the million-dollar check conduct

that is also the subject of grounds nine and ten because he says it is something he learned about

in the PSR.  (Arguably, Stergios might have raised this ground in relation to the above-guideline

sentence for escape, although he did not do so.)

 If Stergios means to suggest that he is entitled to pretrial or similar early notice of all

relevant conduct that might impact a Sentencing Guidelines recommended sentence, I am

unaware of what legal authority he bases that assertion on.  There is authority requiring early

notice concerning prior convictions in certain drug cases, 21 U.S.C. § 851, but that has no

application in this case.  The receipt of notice in the presentence report itself is how the process

ordinarily works.  See Fed. R. Crim. P. 32(e).  The Rules do require that a defendant receive

notice from the court if the court identifies a ground for "departure" not identified in the

presentence report, Fed. R. Crim. P. 32(h), but here Stergios received notice of the potential

enhancement in the presentence report, so he did not need notice from the court.  This is yet

another procedurally defaulted, nonconstitutional ground for habeas relief that does not involve

exceptional circumstances.  Neither trial nor appellate counsel was deficient for failing to press

this non-issue.[3]

---

[3] Even if there were a violation of Rule 32(h) with respect to the million-dollar checks or with respect to the above-guideline escape sentence, post-United States v. Booker, 543 U.S. 220 (2005), the view is that a court is not required to inform a defendant that it is considering an above-guideline sentence (a so-called "variance") when the sentence is based on the sentencing factors of 18 U.S.C. § 3553(a), as this sentence was, and would not surprise competent and reasonably prepared counsel, as this sentence would not.  United States v. Vega-Santiago, 519 F.3d 1, 4-5 (1st Cir. 2008);  see also United States v. Vampire Nation, 451 F.3d 189, 195-96 (3d Cir. 2006).

> i.     A due process violation based on the court's decision to enhance
> his sentence based on relevant conduct involving the million-dollar
> checks.

According to Stergios, the court violated his rights under <u>Blakely v. Washington</u>, 542

U.S. 296 (2004), and "<u>Eugene v. Oregon</u>"[4] because his sentence was enhanced based on factual

findings that were not found by the jury.  However, although Stergios's sentence was enhanced

by a finding related to the $1.4 million check, it was not enhanced beyond the statutory

maximum sentence and, therefore, these circumstances do not fall under the <u>Apprendi/Blakely</u>

rule.  The court did not violate Stergios's constitutional rights by considering the significance of

this relevant conduct when deciding its sentence.  Once more, Stergios raises only a non-

exceptional, procedurally defaulted, non-constitutional ground that does not justify habeas relief.

> j.     Ineffective assistance based on counsels' handling of the million-
> dollar checks.

Stergios argues, in the alternative, that his trial counsel was ineffective because he did not

argue actual innocence in relation to the million-dollar checks and that his appellate counsel was

ineffective for admitting the conduct before the appeals court.  The Court of Appeals explained

the scenario:

> At sentencing, over Stergios's objection, Judge Singal included as relevant
> conduct an additional fraud detailed in Stergios's report of presentence
> investigation (PSI).  According to the PSI, on August 18, 2009, an applicant
> giving the name Thomas Brooks opened a USAA checking account over the
> phone.  Thomas Brooks was the name Stergios had used when committing his
> 2005 offenses.  The applicant also provided an email address that Stergios had
> used in opening one of the USAA accounts included in the 2009 indictment.  On
> August 20, 2009, a $1.4 million check originating from a TD Bank account in the
> name of GoldmanSager was mailed to Thomas Brooks's USAA account.  The
> same day, USAA received a $1.2 million check made payable to Stergios from
> the Brooks account.  [footnote omitted]  Though the $1.4 million check did not

---

[4]      It is not apparent to me what case Stergios is referencing, unless he means <u>Oregon v. Ice</u>, 555 U.S. 160
(2009), which, like <u>Blakely</u>, is in the line of Supreme Court precedent starting with <u>Apprendi v. New Jersey</u>, 530
U.S. 466 (2000), all of which addressed state rather than federal sentencing regimes.

result in any actual loss, Judge Singal included it as intended loss in his offense
calculation.

Stergios, 659 F.3d at 130 (footnote omitted).  Stergios's suggestion that there was an actual

innocence angle to play at sentencing is entirely unsupported.  The government's preliminary

showing (attachments to its sentencing memorandum) reflected a strong likelihood that it would

be able to carry its burden of proving the relevant conduct by a preponderance of the evidence if

Stergios had challenged the factual statement contained in paragraph 10A of the final

presentence report.[5]

Trial counsel was not asleep at the wheel on this issue.  In his sentencing memorandum,

he kept open the possibility that he might challenge the factual statement, noting, correctly:

> The exact facts concerning the $1.4 million amount are not clear, and there was
> no testimony about $1.4 million at trial.  The government is attempting to offer
> "relevant conduct" that was not part of the trial evidence.  The burden of
> establishing the enhancement falls on the government, by a preponderance, and
> the PSR alone does not overcome the defense objection, lodged here.

(Def.'s Sentencing Memorandum at 2, ECF No. 93 (citing U.S. v. Acosta, 303 F.3d 78, 82 (1st

Cir. 2002)).  However, at the sentencing hearing, counsel chose to focus his presentation on the

question of whether the underlying facts demonstrated "intended loss" and not to attempt to

argue that Stergios had not actually attempted to negotiate the checks.  Assuming for the sake of

argument that the government's preliminary paper showing was insufficient to prove the relevant

conduct because it was entirely unsworn—the showing consisted of an unsworn fraud summary

from USAA Bank outlining the history related to the million-dollar checks (ECF No. 94-2) and

copies of a deposit form and printouts of electronic copies of the front and back of the checks at

issue (ECF No. 94-3, 94-4, 94-5, 94-6) with no accompanying affidavit—that does not mean that

---

[5]      The Probation Office seems to have accepted this showing as sufficient for purposes of its final PSR,
because it did not outline in the PSR any independent investigation related to the USAA summary.

the government would have been denied the opportunity to present sworn evidence had counsel asserted an intention to press an evidentiary challenge.

The court recognized the issue during its prehearing conference, asking whether there was a factual dispute concerning the million-dollar checks, or if it was just "an issue of how to deal with it." (Transcript of Sentencing Hearing at 3:12-13 (prehearing conference).) Defense counsel responded that it was only "a question of intent." (Id. at 3:14-15.) In doing so he effectively abandoned any evidentiary challenge to the government's ability to prove the underlying facts. However, given the nature of the sentencing process and counsel's desire to plead for leniency, to make a straight-faced argument that the conduct was the product of a manic episode and to set Stergios up for his own allocution, there is no basis for finding ineffective assistance in not challenging the government's ability to prove that Stergios engaged in the conduct involving the million-dollar checks. Because of counsel's approach, which appears likely to have been the wisest course, the court was not required to make its factual findings following an evidentiary hearing.

When making its findings, "the district court may rely on the PSR, affidavits, documentary exhibits, and submissions of counsel." United States v. Ranney, 298 F.3d 74, 81 (1st Cir. 2002).

> Whether or not it determines that an evidentiary hearing is necessary, "in resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a), (policy statement); United States v. Zuleta-Alvarez, 922 F.2d 33, 35-36 (1st Cir. 1990) (interpreting U.S.S.G. § 6A1.3), cert. denied, 111 S. Ct. 2039 (1991).

United States v. Skrodzki, 9 F.3d 198, 202 (1st Cir. 1993). "In sentencing matters, presentence reports are normally considered reliable sources of information, upon which sentencing courts

may rely, as are court records.  That is to say, courts can, and do, commonly take as true facts stated in presentence reports *when they are not challenged*."  <u>United States v. Wilkinson</u>, 926 F.2d 22, 28 (1st Cir. 1991) (emphasis in original).  <u>See also</u> <u>Lombardi v. United States</u>, No. 94-1865, 1995 U.S. App. LEXIS 4810, at *7 (1st Cir. Mar. 13, 1995) ("[T]he district court was warranted in accepting as true all facts appearing in the PSR to which no objection had been voiced.").

The alternative course now advanced by Stergios was fraught with peril, particularly as Stergios desired to allocute in the hopes of a lenient sentence.  Moreover, Stergios has offered no salient details suggesting his actual innocence or anything suggesting that the government could not easily have established the relevant conduct attributed to Stergios in the unsworn USAA summary.  On appeal, Stergios's appellate counsel repeated the same arguments made by trial counsel at sentencing, did not argue that Stergios did not write the check (which is different than admitting he did), and did not argue that the government failed to prove that he had.  <u>Stergios</u>, 659 F.3d at 135 n.12.  However, appellate counsel's performance was not deficient for failing to challenge the sufficiency of the evidence because trial counsel's decision to concede the issue at the sentencing hearing was within the realm of reasonable performance and that decision deprived appellate counsel of the argument.  Thus, there is no "cause" under <u>Strickland</u>.

As for <u>Strickland</u> prejudice, although the court need not reach it, there is every appearance in the record that the court's findings on this issue simply reinforced a sentence that the court would have imposed in any event.  The court emphasized that it found Stergios to have contempt for authority and a lack of genuine remorse.  (Transcript at 35.)  The court also emphasized the fact that the last time it sentenced Stergios the sentence was for 75 months and it still had not dissuaded Stergios from engaging in fraudulent activity.  (<u>Id.</u> at 36-37.)  The court is

in the best position to make a prejudice evaluation because only it knows exactly how it weighed the section 3553 factors.  In any event, for reasons already indicated, Stergios received reasonable counsel at sentencing and on appeal.

Lastly, in terms of the statutory grounds for section 2255 relief, this issue over the application of a sentencing guideline does not present a constitutional error, or other legal error given the court's reference to and reliance on the section 3553 factors to reach its sentence, or a jurisdictional problem, or a sentence in excess of the maximum authorized by law.  The only remaining section 2255(a) ground for the motion is that the sentence "is otherwise subject to collateral attack."  Habeas relief is only available under this provision, section 2255(a)(4), "if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'"  Knight, 37 F.3d at 772 (quoting Hill, 368 U.S. at 428).  The circumstances and procedure under review in this case fall well within the boundary established by this standard.

> k.      Violation of religious freedom based on a special condition of
> supervised release that prohibits the use of alcohol.

Stergios says he "participates" in "many religions," including some that use wine in their ceremonial rights and he maintains that a condition prohibiting the use of alcohol during supervised release infringes upon his free exercise of religion.  The special conditions imposed by the court do include a prohibition on use of alcohol that is more restrictive than the standard condition prohibiting excessive use.  It is evident, however, that the condition is associated with drug and alcohol abuse therapy.  (Judgment at 4, Special Condition 6, ECF No. 97.)  Stergios is not yet serving supervised release and therefore is not currently under any restraint upon his free exercise of religion, assuming he actually is an adherent of any particular religion.  Stergios has the ability to preserve the issue of a religion-based exception outside of the habeas context by

means of a Rule 32.1(c) motion to modify the conditions of supervised release.  There are no exceptional circumstances warranting habeas relief for this procedurally defaulted ground nor is there any harm from counsels' failure to pursue it at sentencing or on appeal.

> l.    Violation of his right to be "pain free" based on a special condition
> of supervised release that prohibits the use of marijuana.

Stergios complains that someday a doctor might prescribe him marijuana for pain and it makes no sense that he is prohibited from using marijuana for pain when he would not be prohibited if the doctor prescribed him narcotics.  This procedurally defaulted, non-constitutional, and hypothetical plaint does not present the sort of exceptional circumstances that would warrant habeas relief.

## CONCLUSION

For the reasons stated above, no evidentiary hearing or discovery is warranted and I recommend that the Court deny Stergios's motion to amend (ECF No. 139), deny Stergios's motion for disclosure and discovery (ECF No. 136), and deny Stergios's section 2255 motion (ECF No. 134).  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 3, 2013